IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ANTONIO KEATON,

    Plaintiff,                              No. CIV S-03-0864 GEB CMK P

    vs.

T. FELKER, et al.,

    Defendants.                      FINDINGS & RECOMMENDATIONS

        Plaintiff is a state prisoner, without counsel, prosecuting this civil rights action against defendants Felker and Brown.[1]  This matter is before the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72-302(b)(21) for findings and recommendation on defendants' motion to dismiss.

**I.   Standard of Review**

        A motion to dismiss for failure to state a claim should not be granted unless it appears beyond doubt that plaintiff can prove no set of facts in support of the claim or claims that would entitle him to relief.  See Hishon v. King & Spalding, 467 U.S. 69, 73 (1984) (citing Conley v. Gibson, 355 U.S. 41, 45-46 (1957)); see also Palmer v. Roosevelt Lake Log Owners

---

[1] Defendant Dikeson was dismissed from this action on May 15, 2006. (Doc. 56.)

Ass'n, 651 F.2d 1289, 1294 (9th Cir. 1981).  In considering a motion to dismiss under this standard, the court must accept all allegations of material fact as true and must construe them in the light most favorable to the plaintiff.  See Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740 (1976); see also Barnett v. Centoni, 31 F.3d 813, 816 (9th Cir. 1994) (per curiam). All ambiguities or doubts must also be resolved in the plaintiff's favor.  See Jenkins v. McKeithen, 395 U.S. 411, 421 (1969).  Pro se pleadings are held to a less stringent standard than those drafted by lawyers.  Haines v. Kerner, 404 U.S. 519, 520 (1972).

To determine whether a complaint states a claim upon which relief can be granted, the court generally may not consider materials outside the complaint and pleadings.  See Cooper v. Pickett, 137 F.3d 616, 622 (9th Cir. 1998); Branch v. Tunnell, 14 F.3d 449, 453 (9th Cir. 1994).  The court may, however, consider: (1) documents whose contents are alleged in or attached to the complaint and whose authenticity no party questions, see Branch, 14 F.3d at 454; (2) documents whose authenticity is not in question, and upon which the complaint necessarily lies, but which are not attached to the complaint, see Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001); and (3) documents and materials of which the court may take judicial notice, see Barron v. Reich, 13 F.3d 1370, 1377 (9th Cir. 1994), except prison regulations, see Anderson v. Angelone, 86 F.3d 932, 934 (9th Cir. 1996).

Finally, leave to amend a deficient complaint must be granted ". . . [u]nless it is absolutely clear that no amendment can cure the defects."  See Lucas v. Dep't of Corrections, 66 F.3d 245, 248 (9th Cir. 1995) (per curiam); see also Lopez v. Smith, 203 F.3d 1122, 1126 (9th Cir. 2000) (en banc).

**II.   Background**

Taken in a light most favorable to plaintiff, the facts are as follows.  Plaintiff underwent neurosurgery for resection of pituitary gland adenoma. (Am. Compl. at 5.)  The procedure left him with visual defects, headaches and photo phobia, so that he is now legally blind with no vision in his left eye and some vision in his left eye.  (Id..)  Plaintiff claims that he

has chronic arthritis, which necessitates housing him at a prison with a warm climate and that he needs pain management for broken bones in two fingers of his right hand and hormone replacement therapy. (Id. at 5-6.)

Plaintiff was transferred to High Desert State Prison (HDSP) from California Medical Facility (CMF) on November 20, 2002. (Id. at 5.) Prior to plaintiff's transfer, medical staff at CMF had consulted and concluded hat plaintiff could be housed at HDSP. (Defs.' Mot. Dismiss, Ex. A at 1.)

On December 10, 2002, plaintiff submitted a request for reasonable accommodation because of his visual impairment asking that he be transferred to California State Prison-Corcoran (CSP-Corcoran) for treatment of his medical problems and instruction in Braille. (Id. at 7-8.) Plaintiff asked to be removed from the "mainline" because he was afraid that his visual impairment made him unable to defend himself. (Id.) Defendant Brown interviewed plaintiff, on December 20, 2002, regarding the request. (Id. at 11.) Defendant Brown told plaintiff that he would recommend his transfer back to CMF or to CSP-Corcoran where he could get the care that he needed. (Am. Compl. at 6.) However, Dr. Roche, the Chief Physician and Surgeon, denied plaintiff's transfer request at the first level because HDSP could provide the medical care plaintiff needed. (Defs.'s Mot. Dismiss, Ex. A at 5; 11.) Dr. Roche noted that HDSP was designated as a facility for vision impaired inmates and that plaintiff could seek help from the disability placement program (DPP) instructor regarding his request for Braille instruction and that talking books and magazines were available through the library. (Id.)

Plaintiff submitted a grievance on January 6, 2003, requesting review at the second level. (Id. at 9.) Plaintiff requested to be transferred to a facility that could meet all his medical needs. (Id.) Plaintiff stated that he needed to see a specialist, and complained of not receiving injections for chronic headaches and hormone replacement, frequent nosebleeds, difficulty breathing, and waking from sleep with "the shakes." (Id.) Plaintiff asserted that although the library had talking books, it had little regarding Braille instruction. (Id.)

1  Dr. Sandham, the Chief Medical Officer, partially granted the appeal at the second
2 level on January 14, 2003, to the extent that plaintiff was requesting to see a specialist. (Id. at 3-
3 4.) Dr. Sandham noted that Dr. Brown had examined plaintiff on January 10, 2003 and
4 recommended neurology and psychiatry consultations and that approvals of those consultations
5 were pending before the Medical Authorization Review Committee. (Id.) With respect to
6 plaintiff's other requests, Dr. Sandham found that no physician had recommended that plaintiff
7 receive injections for headaches or hormone therapy and that his health record did not show any
8 complaints of nosebleeds. (Id.) Plaintiff was informed that his request to learn Braille was not a
9 medical issue and that he should contact the DPP teacher or appeal the issue separately. (Id.)
10 The grievance was denied at the Director's level on March 3, 2003. (Id. at 1-2.)
11  Plaintiff claims that during a classification committee, defendant Felker, the Chief
12 Deputy Warden at HDSP, told plaintiff that he "could care less" about plaintiff's medical
13 problems and that plaintiff would not get a transfer. (Am. Compl. at 6.) Plaintiff claims that Dr.
14 Brown examined two broken bones in plaintiff's hand, but failed to treat him. (Id. at 6.)
15  Plaintiff asserts that defendants have violated his Eighth Amendment right to be
16 free from cruel and unusual punishment because HDSP cannot meet plaintiff's medical needs and
17 does not afford him adequate protection from violence by other inmates. Plaintiff seeks a transfer
18 and one million dollars.

**III. Discussion**

20  Defendants contend that this action should be dismissed for failure to exhaust
21 administrative remedies and for failure to state a claim.

22  A.  Failure to Exhaust

23  The Prison Litigation Reform Act requires that prisoners bringing § 1983 actions
24 must exhaust their administrative grievance remedies prior to bringing suit. See 42 U.S.C. §
25 1997e(a). I The exhaustion of prison administrative procedures is mandated "regardless of the
26 relief offered through [such] procedures." Booth v. Churner, 532 U.S. 731, 741 (2001). The

1  United States Supreme Court has cautioned that it "will not read futility or other exceptions into
2  statutory exhaustion requirements where Congress has provided otherwise." Id. at 741 n.6
3  (2001).  The Court has also ruled that the exhaustion requirement "applies to all inmate suits
4  about prison life, whether they involve general circumstances or particular episodes, and whether
5  they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002).
6           In California, the state regulations that govern grievance procedures in state jails
7  and prisons provide that inmates "may appeal any departmental decision, action, condition, or
8  policy which they can demonstrate as having an adverse effect upon their welfare." Cal. Code
9  Regs. tit. 15, § 3084.1(a).  An administrative appeal may progress from an informal review
10 through three formal levels of review. See Cal. Code Regs. tit. 15, § 3084.5.  A decision at the
11 third formal level, which is also referred to as the director's level, is not appealable and concludes
12 a prisoner's departmental administrative remedy. See  Cal. Code Regs. tit. 15, §§ 3084.1(a) and
13 3084.5(e)(2).  Departmental appeals coordinators may summarily deny a prisoner's untimely
14 administrative appeal. See Cal. Code Regs. tit. 15, §§ 3084.3(c)(6) and 3084.6(c).  To comply
15 with the PLRA exhaustion requirement, a state prisoner in California must file an inmate appeal
16 on each claim concerning prison conditions or events and must proceed to the highest level of
17  administrative review available to him before he seeks judicial relief, regardless of the relief
18 desired by the prisoner.
19          The Ninth Circuit has held that the PLRA exhaustion requirement is not
20 jurisdictional. See Wyatt v. Terhune, 315 F.3d 1108, 1117 n.9 & 1119 n.13 (9th Cir. Jan. 2, 2003)
21 (citing Rumbles v. Hill, 182 F.3d 1064, 1067-68 (9th Cir. 1999)), petition for cert. filed, (U.S.
22 Apr. 1, 2003) (No. 02-1486).  The Ninth Circuit and six other circuit courts have ruled that the
23 exhaustion requirement does not impose a pleading requirement on the prisoner but creates a
24 defense that must be raised and proved by the defendants. See Wyatt, 315 F.3d at 1117-19 (citing
25 cases of the Second, Third, Seventh, Eighth, and D.C. Circuits); see also Casanova v. Dubois, 304
26 F.3d 75, 77-78 (1st Cir. 2002).  But see Brown v. Toombs, 139 F.3d 1102, 1104 (6th Cir. 1998)

(per curiam) (requiring a prisoner to plead exhaustion and provide a copy, if available, of the administrative decision disposing of the prisoner's claims); Knuckles El v. Toombs, 215 F.3d 640, 642 (6th Cir. 2000).

It is undisputed that the grievance filed by plaintiff met the PLRA's exhaustion requirement.  The issue for the court is, therefore, what claims were exhausted in plaintiff's prison appeal.  Defendants assert that plaintiff never raised the issue of defendant Brown failing to treat the broken bones in his finger in his prison appeals.  Defendants contend that plaintiff's claim in his grievance that he received inadequate medical care was not sufficient to exhaust his claim that defendant Brown failed to treat the broken bones in his finger.

Neither the Supreme Court nor the Ninth Circuit has provided a legal standard to determine whether a prisoner's complaints are factually sufficient to satisfy the exhaustion requirement of the PLRA.  However, the underlying purpose of the PLRA is instructive in making this determination.  The clear import of the PLRA is to deter meritless prisoner lawsuits and alleviate the caseload burden on the federal courts.  See McKinney v. Carey, 311 F.3d 1198, 1200 (2002) .  "[T]o this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the institution of a federal case." Id. (citing Porter v. Nussle, 534 U.S. 516, 524-25 (2002).  Logically, this means that failure to give prison officials proper notice of a complaint robs them of their opportunity to address the complaint internally; thwarting the goal of the PLRA.  See e.g., Irvin v. Zamora, 161 F.Supp.2d 1125, 1135 (S.D. Cal. 2001) (holding that the focus is on whether plaintiff's grievances were sufficient under the circumstances to put prison officials on notice of the potential claims and to fulfill the basic purposes of the PLRA's exhaustion requirement).

Here, the court cannot find that plaintiff gave prison officials proper notice of his complaint that he received inadequate medical care for the broken bones in his finger.  Plaintiff's December 10, 2002 grievance alleged that his transfer to HDSP put him at danger because he was vision impaired and sought transfer to a prison where all his medical needs could be addressed

and he could learn Braille.  (Defs.'s Mot. Dismiss, Ex A at 7-8.)  Plaintiff requested a second level review on January 6, 2003, raising new claims not raised in the original grievance.  (Id. at 9-10.)  Specifically, plaintiff claimed that he had not been seen by a specialist, that he had frequent nosebleeds, that he woke up with the shakes, had difficulty breathing and was not receiving injections for headaches and hormone treatments.  (Id.)  Plaintiff did not, in either grievance, mention broken bones or identify any medical personnel who failed to adequately treat him.  (Id.)

Defendants have demonstrated that plaintiff never raised his claim that defendant Brown failed to treat two broken bones in his little finger in any prison appeal. See E.g., Wyatt, 315 F.3d at 1120 (stating that defendants bear the burden of establishing that a prisoner has not exhausted the appeals process).

Because of plaintiff's failure to mention his broken finger bones or inadequate treatment by specific medical personnel, prison officials had no notice of and, therefore no opportunity to respond to, this claim.  Accordingly, the court finds that plaintiff failed to exhaust his claim that defendant Brown failed to adequately treat the broken bones in his finger.  The court recommends that this claim should be dismissed without prejudice.

B.     Deliberate Indifference to Medical Needs

Deliberate indifference to a prisoner's medical needs can be demonstrated in two ways: by prison officials denying, delaying or intentionally interfering with medical treatment or by the manner in which prison physicians provide medical care. See Estelle v. Gamble, 429 U.S. 97 (1976); Hutchinson v. United States, 838 F.2d 390, 394 (9th Cir. 1988).  Deliberate indifference exists only when prison officials know of and disregard an excessive risk to inmate health or safety. See  Farmer v. Brennan, 511 U.S. 825, 837 (1994); see also, McGuckin v. Smith, 947 F.2d 1050, 1060 (9th Cir. 1992) (overruled on other grounds) (stating that "a defendant must purposefully ignore or fail to respond to a prisoner's pain or possible medical need in order for deliberate indifference to be established").  The indifference to a prisoner's medical need must be substantial because inadequate treatment due to negligence, inadvertence or differences in

judgment between an inmate and medical personnel does not rise to the level of a constitutional violation. See Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981). A prisoner who makes a claim of deliberate indifference to a serious medical condition based on delay must show that the delay resulted in substantial harm. See Wood v. Housewright, 900 F.2d 1332, 1335 (9th Cir. 1990).

Plaintiff has not shown that defendants were deliberately indifferent to his medical needs in violation of the Eighth Amendment. Plaintiff argues that defendant Brown violated his civil rights by agreeing that plaintiff should be transferred from HDSP but then ultimately not arranging for a transfer.[2] Plaintiff argues that defendant Felker violated his civil rights by failing to transfer plaintiff to another prison. Neither of these allegations, however, state that either defendant denied or delayed medical care to plaintiff. Instead the record shows that prison officials responded to plaintiff's grievances concerning his medical care, offering him solutions to his complaints.

To the extent that plaintiff argues that his rights were violated because he disagreed with his medical treatment plan at HDSP, this also fails to state a claim. Differences in judgment do not rise to the level of a constitutional violation. See Franklin, 662 F.2d at 1344.

Accordingly, the court finds that plaintiff has failed to state an Eighth Amendment deliberate indifference to medical needs claim and recommends that this claim be dismissed.

C.   Deliberate Indifference to Threat of Harm

Prison officials have a duty to take reasonable steps to ensure that inmates are protected from physical abuse. See Hoptowit v. Ray, 682 F.2d 1237, 1250-51 (9th Cir. 1982). To establish a violation of this duty, a plaintiff must establish that prison official were deliberately

---

[2]To the extent that plaintiff brings a claim for failure to transfer him from HDSP, the court notes that inmates do not have a constitutional right to be housed at a particular facility or institution or to be transferred, or not transferred, from one facility or institution to another. See Olim v. Wakinekona, 461 U.S. 238, 244-48 (1983); Meachum v. Fano, 427 U.S. 215, 224-25 (1976); Johnson v. Moore, 948 F.2d 517, 519 (9th Cir. 1991) (per curiam).

indifferent to a serious threat to the inmate's safety. See Farmer, 511 U.S. at 834. To demonstrate that the prison official was deliberately indifferent to a serious threat to the inmate's safety, the prisoner must show that the "official [knew] of and disregard[ed] an excessive risk to inmate...safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and [the official] must also draw the inference." Id. at 837. To prove knowledge of the risk, the prisoner may rely on circumstantial evidence; in fact the obviousness of the risk may be sufficient to establish knowledge. See id. at 842.

Here, plaintiff has not demonstrated that defendants Felker and Brown were personally aware of an actual threat to his safety. In fact, plaintiff's complaint is devoid of any specific threat to his safety. Plaintiff states that he "feels that his life is in danger because of the high level of gang and racial violence here at High Desert State Prison, and plaintiff is legally blind, which puts him in even more danger." (Am. Compl. at 6.) Plaintiff does not allege any specific threat to his safety; instead he only makes a general allegation that he was in danger. In order to state a claim, plaintiff must allege a more obvious risk to his safety. Accordingly, the court finds that plaintiff has failed to state an Eighth Amendment deliberate indifference to safety claim and recommends that this claim be dismissed.

**III.   Conclusion**

Based on the foregoing, IT IS RECOMMENDED that:

1. Plaintiff's claim that defendant Brown provided inadequate medical care for the broken bones in his finger be dismissed, without prejudice, for failure to exhaust;

2. Plaintiff's claim that defendants were deliberately indifferent to his medical needs in violation of the Eighth Amendment be dismissed for failure to state a claim; and

3. Plaintiff's claim that defendants were deliberately indifferent to a serious threat to his safety in violation of the Eighth Amendment be dismissed for failure to state a claim.

///

///

1    These findings and recommendations are submitted to the United States District
2 Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty
3 days after being served with these findings and recommendations, plaintiff may file written
4 objections with the court.  The document should be captioned "Objections to Magistrate Judge's
5 Findings and Recommendations."  Plaintiff is advised that failure to file objections within the
6 specified time may waive the right to appeal the District Court's order. See  Martinez v. Ylst, 951
7 F.2d 1153 (9th Cir. 1991).

July 6, 2006

/s/   **CRAIG M. KELLISON**
Craig M. Kellison
UNITED STATES MAGISTRATE JUDGE